G. W. SMITH, Appellant, v. G. J. THEISS & SON, Appellee.

**SALES:** Rescission—Scope of Cross-examination. A prima-facie showing
1 of rescission by a vendee may be wholly nullified *on cross-examination, and without any plea of waiver of rescission,* by a showing that, subsequent to the attempted rescission, the vendee *treated the property as his own.*

**EVIDENCE:** Relevancy, Competency, and Materiality—Unpleaded
2 Warranty. Testimony as to an unpleaded warranty is inadmissible.

**SALES:** Rescission—Waiver. A vendee who, after attempting to
3 rescind, treats the property *as his own,* thereby cancels his rescission.

*Appeal from Buena Vista District Court.*—JAMES DELAND, Judge.

SEPTEMBER 22, 1923.

ACTION to recover the purchase price paid for an animal, under claimed rescission on account of alleged breach of warranty. At the close of plaintiff's testimony, verdict was directed

for defendants, and judgment entered thereon.  Plaintiff appeals.—*Affirmed.*

*T. E. Diamond* and *Whitney & Whitney,* for appellant.

*Healy & Faville* and *Healy & Breen,* for appellees.

ARTHUR, J.—Appellees were the owners of a herd of thoroughbred cattle, and appointed and advertised a sale thereof, to be held at their farm in Buena Vista County, on the 29th day of June, 1918.  Some time prior, appellees had appointed and advertised a sale of their cattle, or a portion of them, to take place at Sioux City, Iowa.  Dr. J. I. Gibson, then state veterinarian, heard of the proposed sale, and went to Sioux City, and discovered that 11 head of the cattle were afflicted with tuberculosis, and stopped the sale, and gave permission to appellees to reship their cattle to their farm.  On the date of the proposed sale, Dr. Gibson went to the farm where the sale was to take place, and found that the 11 head of cattle which had been placed in quarantine at Sioux City were among the cattle advertised for sale at the Theiss farm, and ordered that they be stricken from the sale catalogue, and not placed on sale.  After the 11 head had been checked off the sale catalogue, Dr. Gibson and the auctioneer, Kraschel, made announcements to the audience, which will be set forth later, and the sale proceeded.  The bull in question, "Allsworth Reformer, No. 540533," was offered for sale, and was bought by appellant for $2,300.  Appellant gave his check for the purchase, and later paid the check.  The animal was shipped to appellant, and arrived at his farm at Paullina, Iowa, about the 7th of July, 1918.  Appellant continued to keep the animal, and had him in his possession at the time of the trial.

Afterwards, about the midle of September, 1918, appellant talked with the elder Theiss at Rembrandt, Iowa, about return of the animal, and Theiss refused to take him back.  In November, 1918, this action was begun, to recover the purchase price paid for the animal.  The action is based upon an alleged express warranty.  The petition alleges breach of warranty, and that, upon discovery of said claimed violation of the alleged warranty, appellant rescinded the contract of purchase.

Appellees answered with a general denial, and specifically denied that they made warranties and guaranties as alleged in the petition, and denied that any warranty or representation made by them in regard to said bull had been breached or violated in any manner.

At the close of appellant's testimony, on motion of appellees, the court directed verdict in favor of appellees, and judgment was entered on the verdict against appellant for costs. From this judgment, this appeal is prosecuted.

I. Appellant assigns 129 errors, practically all of which relate to rulings of the court on the admission and exclusion of testimony. We will discuss the assignments so far as necessary to determine the question involved upon this appeal, which is whether the court erred in directing verdict for appellees.

The express warranty claimed and relied upon by appellant, of the animal in question, consists of statements made before and at the commencement of the sale by Dr. J. I. Gibson, state veterinarian, and by the auctioneer. Concerning such statements the petition alleges:

"By and through the auctioneer then crying said sale, and by and through J. I. Gibson, the said auctioneer and the said J. I. Gibson being by the said defendants and each of them lawfully authorized so to do, each and all orally warranted and guaranteed that the said bull would pass a satisfactory tuberculin retest after 60 days had elapsed from the date of said first test, held immediately after the date of said sale, as aforesaid, upon which said oral warranties and guaranties the plaintiff fully relied."

The announcements and statements made by Dr. Gibson and by the auctioneer, Kraschel, as testified by plaintiff on the trial, were:

" 'The balance of the cattle (after rejecting the 11 head above referred to) will be sold subject to an immediate tuberculin test on the place, and will not be shipped until they have passed a satisfactory test; so you need not be afraid to buy them here today, as all the cattle that are shipped from this place will have to pass a satisfactory test before being shipped to you. Now, do not try to steal this man's cattle on account of the condition here. He has good cattle, some of the best

cattle, a good herd. Now pay him what they are worth.' As I recall it, I think he explained he would test the cattle, and I believe he said they would be tested by the state department. The statements were all made in one connection. This is all that I recall in regard to Dr. Gibson's talk at that time. Dr. Gibson and Mr. Theiss were on the platform when the sale began. After Dr. Gibson made his talk, Mr. Theiss shook hands with him, and I do not recall whether he got down off the platform or not; but I do know that he was present when the first cow was put up for sale. When the first cow was put up for sale, someone back in the crowd—I don't know who—asked about a retest of these cattle. When this question was asked, Dr. Gibson conferred with Mr. Theiss, and then stated that Mr. Theiss had consented to grant the 60-day retest,—a satisfactory retest of the cattle. Mr. Kraschel [the auctioneer] commented on what Dr. Gibson had said, and reassured the crowd that they would be perfectly safe in buying these cattle, with the privilege of a satisfactory test and retest.''

Dr. Gibson testified to the statements made by him and by the auctioneer, and his version of the statements is substantially the same as testified to by appellant.

Alleging breach of the claimed warranty, the petition states that the bull was tubercular, and did not pass the tuberculin test; that the bull did not pass a satisfactory tuberculin test immediately after the sale, or a satisfactory retest on September 9th; that the bull had been afflicted with tuberculosis, and had been suffering with said disease at all times since the date of the sale and a long time prior thereto; that:

''Within a few days after said sale, the said defendant shipped said bull by freight to plaintiff at Paullina, and after said bull was delivered to the plaintiff, the plaintiff discovered that the defendants had breached their several oral warranties and guaranties, for that the said bull had never passed a satisfactory tuberculin test on the 2d day of July, 1918 (the test made immediately after the sale), nor at any time since said time, and that, after 60 days had elapsed, the said bull did not pass a satisfactory tuberculin retest, in compliance with the several warranties and guaranties then and there made at said sale, although the said bull has been twice retested since the

said 60 days had elapsed from the said tuberculin test held on or about the 2d day of July, 1918.''

The petition alleged, as to rescission:

''Plaintiff orally notified the defendants and all of them of the fact that the said bull did not pass a satisfactory tuberculin test on the said 2d day of July, 1918, nor at any time thereafter, and that said· bull was and has been, ever since the 29th day of June, 1918, afflicted with tuberculosis, and by reason thereof, the plaintiff orally and otherwise rescinded said sale and offered to return and redeliver the said bull to the defendants at the place said bull was sold to the plaintiff, to wit, in the town of Rembrandt, Iowa; and that said rescission and said offer to redeliver has been made by the plaintiff to the defendant both orally and in writing; but that the defendants, both orally and in writing, refuse to receive and accept the said bull, should the plaintiff return the same, as aforesaid, and orally and in writing refuse to refund and repay to the plaintiff the said sum of $2,300, or any sum whatsoever.''

II. Appellant testified on direct examination concerning his claimed rescission:

''When the bull was delivered to me, I did not have any information from any source as to whether he had passed a satisfactory or an unsatisfactory tuberculin test. I did not find out the result of the first test until Dr. Shipley came to my farm to give him a retest, about the 9th of September. After this, I offered to return the bull to Mr. Theiss, but he refused to accept him. Soon after the retest on September 9th, this bull was sick for seven or eight days; and about a week after that, I offered to return him to Mr. Theiss. I asked him to take the bull back and refund my money, and he refused to do it. I offered to ship him back to Rembrandt.''

1. Sales: rescission: scope of cross-examination.

On cross-examination, appellant testified, over objections made by his counsel, that he had kept the bull ever since he purchased him, and had him in his possession at the time of the trial; that ''we bred him for several months after I was down to see Mr. Theiss;'' that they used the bull as a breeder after they received him, up to the 1st of December, 1919; that they had a herd of about 40 cows, and that they bred this bull to

about 30 or 40 of said thoroughbred cows; that he heard that the bull had not passed a satisfactory test at the time Dr. Shipley came to his place to make the retest, on September 9th; that after that, he kept on using the bull, and bred him to something like 10 cows; that they bred the bull to 30 cows between the 10th of July and the 9th of September, without waiting for a retest; that, within 60 days after they bought the bull, they bred him to about 30 thoroughbred cows.

It was further developed on cross-examination that, about a year after appellant had talked with Mr. Theiss about returning the bull, he placed an advertisement in the Iowa Homestead, under date of August 7, 1919, stating, among other things, that he had for sale "several young bulls by Imp. Aulsworth Reformer, the intense Villager bred bull at the head of this herd, shown with great success by Alex Mitchell, * * * All of the Aulsworth Reformer calves that we have are from breeding since October 1, 1918."

The testimony brought out on cross-examination of appellant was objected to by counsel for appellant on the ground that it was "incompetent, irrelevant, and immaterial, and not proper cross-examination, and not within the issues of the case."

After counsel for appellees had cross-examined appellant as to his breeding the animal to his herd of cows, and especially as to his breeding the animal to his cows after he knew of the tuberculin tests, and as to his advertisement, authorized by him, in the Homestead, as to the calves begotten by the bull, counsel for appellant sought, on redirect examination, to have his client testify in regard to the breeding qualities of the animal, claiming that Theiss told appellant, when the animal was in the ring for sale, that the animal was a splendid breeder, and that he urged appellant to buy him, and that Theiss guaranteed the animal to be a sure breeder. Counsel stated that his object in redirect examination was to show that appellant's reason and object for breeding the bull after the tests, and after he had requested appellees to take back the bull, was to test out whether the bull was a sure breeder. This line of testimony was rejected, on objection by appellees, on the ground that the bull's breeding qualities were not within the express warranty which appellant claimed he relied upon in the purchase of the bull.

III.   Counsel for appellant strenuously urges that it was error to receive the testimony brought out on cross-examination of appellant above referred to, contending that said testimony was elicited for the purpose of showing a waiver of rescission on the part of appellant, and that it was incompetent because waiver was not pleaded by appellees. We think that counsel misapprehended the purpose of the cross-examination. Appellant pleaded rescission. Appellees denied such rescission, and appellant went upon the witness stand and testified, on direct examination, to what he had said and done, to prove rescission. The cross-examination was within the purview of the direct examination. The cross-examination developed to what extent appellant had used the animal in breeding, and over what period; that, during all of the time after appellant purchased the animal, he kept him and used him as his property, and had never treated him as the property of appellees; that, although he had requested appellees to permit him to return the animal, he had, after that, not segregated it nor treated it as the property of appellees, but kept on using it as one of his herd bulls; and that he had, almost a year after offering to return the bull, advertised for sale calves of this bull, stating that they were the calves of this particular bull. It was not error to receive such testimony on cross-examination.

IV.   Counsel urges that the court erred in refusing to permit appellant to testify, on redirect examination, that his purpose in using the animal as a herd bull and breeding him to his cows after he was informed of the tuberculin

2. EVIDENCE: relevancy, competency, and materiality: unpleaded warranty.

tests, and after he had requested appellees to take the bull back, was to test out whether the bull was a sure breeder, in explanation of his keeping the bull. Manifestly, it was not error to exclude such line of testimony, for appellant had not claimed nor sued upon any such warranty, either express or implied.

We have carefully considered appellant's assignments attacking the rulings of the court respecting the reception and exclusion of testimony, and discover no error therein.

V.   We may now consider the question of whether or not, as a matter of law, appellant made out a case entitling him to go to the jury.

If we were to assume that, at the time the animal was sold, a warranty was made, as claimed by appellant, and that such warranty was breached, appellant, of course, had his election to confirm the sale and retain the animal and sue for damages, demanding as such damages the difference between the value of the animal if he had been as warranted, and the value of the animal in the condition he was, or to rescind the contract, return the animal purchased, placing appellees, so far as possible, *in statu quo,* and recover the purchase price, with interest and proper expenses incurred.

3. SALES: rescission: waiver.

In the instant action, appellant elected to pursue the latter of the two remedies,—that of rescission. Before being entitled to rescind his contract of purchase, it was incumbent upon appellant to prove the warranty pleaded and the breach thereof; and the burden was upon appellant to prove that he promptly and within reasonable time, acting in good faith, rescinded the contract and so notified appellees, and that at all times thereafter he maintained himself and the property in position where the property could be returned and the act of rescission completed.

Without passing upon whether or not what was said and done at the opening of the sale on June 29th, at the Theiss farm, constituted a warranty, such as is pleaded by appellant, and without passing upon whether there was a breach of the claimed warranty, we go to the question of whether or not the facts disclosed by the evidence established a rescission.

The testimony is not in dispute, and it was a question of law for the court to determine whether or not the evidence was sufficient to prove a rescission of the contract involved. After appellant knew of the tuberculin test made immediately after the sale, and the retest made about September 9th, and after he claimed to have discovered the failure of the bull to comply with the terms of the alleged warranty, he continued to keep, own, and use the bull for the very purpose for which the animal was bought, and continued to keep and use him for that purpose, down to the date of the trial. Appellant never at any time treated the animal as the property of appellees, but at all times treated, handled, and used the animal as his own property.

We reach the conclusion on the question of rescission that, as a matter of law, the evidence does not establish rescission, and that the court did not err in directing verdict for appellees. Appellant having failed to establish rescission of the contract of sale, an essential element of his case, we need not pass upon the questions of warranty and breach of warranty.

The ruling of the trial court in directing verdict for appellees is—*Affirmed.*

PRESTON, C. J., EVANS and STEVENS, JJ., concur.

FAVILLE, J., took no part.