MAY KEENAN *vs.* CHERRY & WEBB.

DECEMBER 11, 1925.

PRESENT: Sweetland, C. J., Stearns, Rathbun, Sweeney, and Barrows, JJ.

*(1)  Sales.  Warranties.  Evidence.*

Where a sale had been completed, evidence of statements made to purchaser on the following day, constituting express warranties of quality was inadmissible.

*(2)  Sales.  Warranties.  Shop Talk.*

Statements by a seller that the article was "a good coat"; that it would "wear very good" and that purchaser "would not be sorry if she bought it", did not constitute express warranties of quality, but were proper dealer's talk.

*(3)  Sales.  Implied Warranty of Merchantability.*

Gen. Laws, 1923, cap. 305, sec. 15 (4441) providing that "where the buyer expressly or by implication makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not) there is an implied warranty that the goods shall be reasonably fit for such purpose", makes the warranty depend upon the existence of two facts; first, knowledge conveyed from the buyer to the seller of the particular use to which the article is to be put and second, reliance on the seller's skill and judgment.  Such act is applicable to dealers equally with manufacturers, and included a warranty of merchantability in the case of a customer purchasing a fur coat for her personal wear.

*(4)  Warranties.  Express and Implied.*

Absence of express warranties does not preclude the existence of implied ones.

*(5)  Sales.  Warranties.  Merchantability.*

Merchantability means that the article sold shall be of the general kind described and reasonably fit for the general purpose for which it shall have

been sold. The buyer's particular purpose may be equivalent to nothing more than his general purpose or it may relate to his more specific purpose.

*(6) Sales. Warranties. Merchantability.*

Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way unless there is evidence to the contrary. This is only a warranty of merchantability.

*(7) Sales. Warranties. Merchantability. Evidence.*

Knowledge of a buyer's particular purpose may be shown from the sale alone.

*(8) Sales. Warranties.* ·

Reliance by a buyer on a seller's skill and judgment is a question of fact.

*(9) Sales. Warranties. Merchantability.*　　　　　,

Where a buyer purchases a coat from a dealer to wear, the dealer was *prima facie* chargeable with knowledge of this particular purpose, and the warranty of merchantability was that the coat was fit to wear as an article of apparel; and it was a question of fact whether the coat, though of the best grade of its kind, and inspected by the buyer, the pelts of which tore apart the first time it was worn and which was repaired five or six times and which continued to pull out, was merchantable.

ASSUMPSIT. Heard on exceptions of defendant and certain exceptions sustained.

BARROWS, J. Action of assumpsit for breach of warranty of merchantability. Plaintiff got a verdict for $123. Defendants are before us on exceptions to admission of certain evidence, to the refusal of the trial court to direct a verdict in their favor or to grant them a new trial.

On December 2, 1920, the plaintiff bought of defendants, dealers in ready-to-wear clothes, a French Coney coat for $99. Coney is a kind of rabbit skin. The saleswoman represented the coat as "a good coat", said that it would "wear very good" and told plaintiff that she "would not be sorry if she bought it". Plaintiff testified that she knew nothing about the quality of fur coats and took the saleswoman's word. She admitted trying on "a good many fur coats" in defendants' store before selecting this one. Having but two dollars with her and the occasion being a special sale for three days, she was permitted to make the purchase at the reduced price and leave the money as a deposit. She

received a slip showing a sale of the coat for $99 and a two dollar credit. She returned the next day for the coat and paid the balance of the purchase price.

Between the time of the deposit of the two dollars and the payment of the balance, plaintiff had seen elsewhere a Coney coat marked $69 and on the day that she paid the balance she had first asked for the return of her deposit which was refused. After further talk with the saleswoman, wherein she was assured that the $69 coat was third quality and that hers was a first quality and that defendants "stood behind" their goods, she took the coat. On the occasion when first worn the coat split a distance of eight to ten inches from the shoulder down the back. The split was alongside of a seam. It occurred because the stitches sewing the pelts together had cut through one of the skins. The split was therefore a tear as distinguished from a rip where the stitches are broken. Inspection by one having no knowledge of furs would not have revealed the danger of tearing. On several occasions defendants attempted to sew up the tear in such manner that the skins would hold together. They were unable to do so. The coat was offered as an exhibit at the trial.

(1) To the admission of talk about the quality of the coat on the second day, defendants objected and bring the correctness of the ruling before us on exceptions 1, 2 and 3. The plaintiff's own evidence clearly shows that the sale was completed on the first day. The sales slip is corroborative and her subsequent statement during a colloquy with the judge about her right to take or leave the coat on the second day was her conclusion as to her legal rights, not evidence of an agreement actually made the first day. Evidence of statements by the saleswoman on the second day, some of which constituted express warranties of quality, was improper and exceptions thereto are sustained.

Defendants claim that on the evidence a verdict should have been directed and are correct unless there were warranties, express or implied, as to merchantability of the coat.

The language used when the coat was sold did not constitute an express warranty. To so hold would preclude fair commendation by a shopkeeper of his goods or expressions of honest opinion about their value or wearing qualities. Perhaps modern conceptions of business exact from a storekeeper a larger degree of frankness than did those in the day when the doctrine of *caveat emptor* first appeared but as yet general expressions of commendation as distinguished from statements of fact have not been held to be warranties. Such expressions as occurred in this case are still recognized as proper dealer's talk. *Handy* v. *Waldron*, 18 R. I. 567; *McGinn* v. *Gladding Dry Goods Co.*, 40 R. I. 348, at 358-9; *Morley* v. *Consolidated Mfg. Co.*, 196 Mass. 257; *Ireland* v. *Louis K. Liggett Co.*, 243 Mass. 243; *Harburger* v. *Stern Bros.*, 189 N. Y. Sup. 74.

(3)     Plaintiff claims that there was an implied warranty of merchantability by virtue of the Uniform Sales Act in force in Rhode Island at the time of the sale, as General Laws, 1909, Title XXVII (now Gen. Laws, 1923, Title XXX). The section relied upon in the General Laws of 1909 is Chapter 261, Sec. 15, Sub. s. 1. (now Gen. Laws of 1923, Chap. 305, Sec. 15, Sub. s. 1. (4441) ). Our act copies the English Act, Williston on Sales, 2d ed. § 248, p. 499. The section now under consideration corresponding to 56 and 57 Victoria, Chap. 71, Sec. 14, Sub. s. 1, is as follows: "Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose". This warranty depends upon the existence of two facts: first, knowledge conveyed from the buyer to the seller of the particular use to which the article is to be put; and, second, reliance on the seller's skill and judgment. Defendants deny applicability to this sale. The act was adopted in Rhode Island in 1908, Pub. Laws, Chap. 1548. Prior to

that time the section before us had been construed in England. *Preist* v. *Last*, (1903), 2 K. B. 148; *Frost* v. *Aylesbury Dairy Co. Ltd.* (1905), 1 K. B. 608; *Wallis* v. *Russell Co.*, (1902), 2 Irish 585. That construction held the act applicable to dealers equally with manufacturers. When adopted in Rhode Island the English construction of the act presumably was intended to be followed. *R. I. Hos. Trs. Co.*, v. *Hail*, 47 R. I. 64; same case 129 Atl. 832. Everywhere that the act has been construed in the United States it has been held to be applicable to dealers. See cases *infra*.

(4)    Absence of express warranties does not preclude the existence of implied ones. *Sampson* v. *Frank T. Pels Co.*, 199 N. Y. App. Div. 854. *Ireland* v. *Louis K. Liggett Co.*, 243 Mass. 243.

It has been suggested that the warranty referred to in the Sales Act did not relate to general merchantability but only to some specific purpose of the buyer. Williston § 248. Merchantability means that the article sold shall be of the general kind described and reasonably fit for the general

(5) purpose for which it shall have been sold. The buyer's particular purpose may be equivalent to nothing more than his general purpose or it may relate to his more specific purpose. Benjamin on Sales, 6th Eng. ed. p. 715–6, quoted in Williston § 248 at p. 501. *Beggs* v. *James Hanley Brewing Co.*, 27 R. I. 385, arose prior to the Sales Act. It illustrates that merchantability and fitness for a particular purpose may not be equivalent. There a heater was merchantable and yet not fit for the particular purpose of the buyer,

(6) namely, to heat a specific building. Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way unless there is evidence to the contrary. This is only a warranty of merchantability. In *American Tank Co.* v. *Revert Oil Co.*, 108 Kans. 690, are cited numerous cases where merchantability is identical with fitness for the particular purpose of the buyer. Our conclusion therefore is

that the section included a warranty of merchantability in this case.

What evidence is required to prove this warranty? Knowledge of the buyer's particular purpose may be shown from the sale alone. *Jackson* v. *Watson & Sons* (1909), 2 K. B. 193 (tinned salmon); *Frost* v. *Aylesbury Dairy Co., supra* (milk); *Preist* v. *Last, supra* (hot water bottle); *Steamer S. Angelo Toso,* 271 Fed. 245, C. C. A. (7) (coal); *Ward* v. *Great Atlantic and Pacific Tea Co.,* 231 Mass. 90 (canned beans); *Ireland* v. *Louis K. Liggett Co., supra* (cold cream). Some of these cases also permit a jury to infer reliance upon the seller's skill and judgment from the fact of the sale alone. *Ward* v. *Great Atlantic and Pacific Tea Co., supra.*

Prior to the enactment of the Uniform Sales Act in the United States it was commonly held that inspection of goods bought from a dealer, which inspection took place before the bargain was made, precluded the implication of warranty of quality whether or not the defect was latent. *Barnard* v. *Kellogg,* 10 Wall. 383; *Farrell* v. *Manhattan Market Co.,* 198 Mass. 271, and numerous cases cited in Williston § 234, p. 454, n. 39.

Inasmuch as the fundamental test under the implied warranty is "whether the buyer justifiably relies on the (8) seller's skill and judgment", Williston § 234, at p. 455, the Sales Act leaves inspection as an important but not conclusive element to be considered in determining the question of reliance. It treats reliance as a question of fact. *Wallis* v. *Russell Co., supra; Luria Bros.* v. *Klaff,* 115 Atl. 849 (Md.), citing Benj. on Sales, 6th Eng. ed. p. 716. The act widens the scope of implied warranties beyond the limitation formerly existing in many states. *Sampson* v. *Frank T. Pels Co., supra; Luria Bros.* v. *Klaff, supra; Ward* v. *Valker,* 44 No. Dak. 598; *Wasserstrom* v. *Cohen, Frank & Co.,* 165 N. Y. App. D. 171; Williston § 248.

Applying these principles to the instant case, there was but one purpose for which this purchaser intended to use

the coat, *viz.*, to wear. The dealer was *prima facie* chargeable with knowledge of this particular purpose. The warranty of merchantability was that the coat was fit to wear not for any particular length of time or satisfactorily to the (9) buyer but to wear as an article of apparel. The only way to know whether a coat was so fit to wear was by wearing it. A jury should determine whether this Coney coat, though of the very best grade of Coney and inspected by the buyer, the pelts of which tore apart the first time it was worn, which was repaired five or six times and which continued to pull out, is merchantable. *Frost* v. *Aylesbury Dairy Co., supra; Preist* v. *Last, supra; Wallis* v. *Russell Co., supra; Sampson* v. *Frank T. Pels Co., supra; Ward* v. *Great Atlantic and Pacific Tea Co., supra; Ireland* v. *Louis K. Liggett Co., supra.*

The charge in this case was very brief. The requirements of the Sales Act were not called to the jury's attention and no exception was taken to the charge. The charge called upon the jury to determine whether the express warranties of the saleswoman were broken. As her statements on the first day were not express warranties and as those of the second day were inadmissible, it is clear that the real issue was not presented to the jury and that a new trial should be granted.

Exception four is overruled. Exceptions one, two, three and five are sustained. The case is remitted to the Superior Court for a new trial.

*Thomas P. Corcoran*, for plaintiff.
*Ratcliffe G. E. Hicks*, for defendants.