HAZEL BRANDENBERG, Appellee, v. THE SAMUEL STORES, Appellant.

No. 39923.

APRIL 10, 1931.

1322

*John D. Randall,* for appellant.

*Wells C. Peck* and *C. W. Meek,* for appellee.

FAVILLE, C. J.—The appellant conducts a store in the city of Cedar Rapids, under the business name and style of "Jordan's." On or about the 10th day of December, 1926, the appellee visited said store for the purpose of purchasing a fur coat. A careful examination by appellee of the coats on hand failed to disclose that the appellant had in stock a fur coat of the particular kind and quality that appealed to the fancy of the appellee. The manager of said store agreed to endeavor to secure a coat that would suit the appellee by order direct from the manufacturers. Later, on or about the 24th day of December, 1926, the appellant's manager advised the appellee that the coat had arrived. The appellee thereupon visited the store and examined the coat that had been procured by appellant. It appeared to be satisfactory, both as to the kind and character of the material of which it was made, and also as to its style and appearance. The coat was delivered to the appellee at said time, and a written contract signed by appellee, which, however, contains no recitals as to any warranty. Appellee made payments on the coat in various installments until February 28, 1927, the total payments aggregating $85. The appellee contends that, on or about said 28th day of February, 1927, she discovered that the coat was defective, in that portions of the fur were loose, and came off in spots, exposing the bare hide. The appellee wore the coat from Christmas until February 28th, and two or three times a week during the month of March. In April, 1927, she consulted an attorney, who wrote a letter to the appellant, demanding the return of the money paid by appellee, and offering to return the coat. The matter appears to have remained *in statu quo* for some time, when the appellee served written notice of rescission of the contract of purchase upon the appellant. An amicable adjustment of the difficulties between the parties appearing not to be within the realm of possibilities, the matter was transferred to the courts, and the appellant commenced an action in replevin in the court of one Lightner, a justice of the peace. A writ of replevin was duly issued, and thereunder said coat was seized. The replevin suit was, on motion, transferred to the justice court of one Travis.

Subsequently, it seems, the said justice adjudged that the defendant (appellee herein) have and recover judgment for the return of said fur coat. It appears that an appeal was taken from the ruling of the justice of the peace to the superior court of the city of Cedar Rapids. In order to "make assurance doubly sure," a writ of error was also sued out from said judgment of said justice of the peace to the said superior court. It also appears that, another form of legal procedure being deemed available, a writ of certiorari was also sued out from said superior court to said justice court. We gather from the record that the writ of certiorari was annulled on the ground that the case was pending on writ of error, and that the court refused to hear the case upon writ of error, because it was pending on appeal. The appellee herein filed in said court an instrument designated as a "special appearance and objection to the assumed jurisdiction of the court to entertain the above-entitled cause as a matter pending on appeal." In the instant case it appears that two futile attempts have been made to plead the various proceedings in the justice courts and in the superior court as *res adjudicata*. The present status of these various legal marches and countermarches is not clearly and lucidly disclosed in the abstract and amendments. While the various courts were struggling with this multitudinous litigation, the *casus belli* appears to have been in the possession of the appellant, and to have been repaired, if repairs were needed, and restored to its original condition. In any event, upon the trial of the instant case, *a* fur coat was produced by the appellant, and a fierce battle raged in the evidence over the identity of said garment. Appellee insists that the coat so produced was not the garment which she purchased, while appellant protests vigorously to the contrary. The picture of the garment portrayed by the appellee is of a worn, ancient, dilapidated, frayed, rotten, shabby, unsightly, and worthless garment; while, on the other hand, the appellant insists that the garment was a new, first-class coat, of excellent material, and made in a first-class manner, and that it was in every way suited to meet the most fastidious requirements.

I. The arguments of both parties are devoted chiefly to a discussion of the question of warranty. We assume, without so deciding, that appellee's petition pleads a cause of action

 predicated on a breach of warranty. Appellee's contention as to the representations made is largely embodied in the following excerpt from her testimony:

"I went over to see it, and the coat was a Northern seal, with marmot collar and cuffs. The first time I saw this coat was when they sent for me to come over, after it arrived from the furrier's in New York. They said it was a coat from the furrier, a brand new coat. Q. Did he tell you anything about how long it would wear you? A. He didn't say any particular time. Q. Did you tell him you wanted a coat to wear for a number of years? A. Why, at that price, high price I paid, I wanted a genuine, good fur coat, and was putting that money into that coat. Q. Did he tell you anything about the service of the coat,—how it would wear you? A. Yes; he said I would get a number of years' service out of the coat; 'it is an A-No. 1 fur coat.'"

It is argued that there was a breach of an implied warranty, entitling appellee to a cancellation of the contract and a return of the money paid.

Appellee relies upon Section 9944, Paragraph 1, Code, 1924, as follows:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose."

This section is part of the Uniform Sales Act, and was considered in *Keenan v. Cherry & Webb,* 47 R. I. 125 (131 Atl. 309), by the Supreme Court of Rhode Island. In that case the seller "represented the coat as 'a good coat,' said that it would 'wear very good;' and told plaintiff that she 'would not be sorry if she bought it.'" The seller also stated that the coat was of first quality, and that the seller "stood behind" the goods it sold.

The court said:

"The language used when the coat was sold did not con-

stitute an express warranty. To so hold would preclude fair commendation by a shopkeeper of his goods or expressions of honest opinion about their value or wearing qualities. Perhaps modern conceptions of business exact from a storekeeper a larger degree of frankness than did those in the day when the doctrine of *caveat emptor* first appeared, but as yet general expressions of commendation as distinguished from statements of fact have not been held to be warranties. Such expressions as occurred in this case are still recognized as proper dealer's talk.''

The court quotes the section of the Uniform Sales Act which we have quoted supra, and says:

''This warranty depends upon the existence of two facts: first, knowledge conveyed from the buyer to the seller of the particular use to which the article is to be put; and, second, reliance on the seller's skill and judgment.''

The court further says:

''It has been suggested that the warranty referred to in the Sales Act did not relate to general merchantability, but only to some specific purpose of the buyer. Williston, Sec. 248. Merchantability means that the article sold shall be of the general kind described and reasonably fit for the general purpose for which it shall have been sold. The buyer's particular purpose may be equivalent to nothing more than his general purpose, or it may relate to his more specific purpose. * * * Under the Sales Act a dealer who sells articles which ordinarily are used in but one way impliedly warrants fitness for use in that particular way, unless there is evidence to the contrary. This is only a warranty of merchantability. In *American Tank Co. v. Revert Oil Co.*, 108 Kan. 690, are cited numerous cases where merchantability is identical with fitness for the particular purpose of the buyer. Our conclusion, therefore, is that the section included a warranty of merchantability in this case. * * * Applying these principles to the instant case, there was but one purpose for which this purchaser intended to use the coat, *viz.*, to wear. The dealer was *prima facie* chargeable with knowledge of this particular purpose. The warranty of merchantability was that the coat was fit to wear, not for any particular length of time or satisfactorily to the buyer, but to wear as an article

of apparel. The only way to know whether a coat was so fit to wear was by wearing it."

We think, under the record in this case, that the court was justified in finding that there was an implied warranty, under the statute. We are also constrained to acquiesce in the conclusion of the trial court that, under the evidence, there had been a breach of said implied warranty. The appellee's remedy is provided by Code Section 9998-1 *d,* as follows:

"Rescind the contract to sell or the sale and refuse to receive the goods, or, if the goods have already been received, return them or offer to return them to the seller and recover the price or any part thereof which has been paid."

The decree of the trial court was in accord with this statute.

II. The appellant relies upon the provisions of Paragraph 5 of Code Section 9998, which is as follows:

"Where the buyer is entitled to rescind the sale and elects to do so, if the seller refuses to accept an offer of the buyer to return the goods, the buyer shall thereafter be deemed to hold the goods as bailee for the seller, but subject to a lien to secure the repayment of any portion of the price which has been paid, and with the remedies for the enforcement of such lien allowed to an unpaid seller by Section 9982."

The contention of the appellant is that, even though, under the record, the appellee should be held entitled to rescind the sale, and if she elected to do so, thereafter she was deemed to  hold the coat as bailee for the appellant. It is the appellant's contention that the appellee failed to hold said coat as bailee, but that, after the claimed rescission, she wore the coat, and therefore did not hold it as bailee, under the statute. Appellant relies upon the case of *Smith v. Theiss & Son,* 196 Iowa 514. In that case the evidence clearly showed that the buyer, after the claimed rescission, retained the purchased property and continued to use it for his own purposes, the same as before the alleged rescission. Such, however, do not appear to be the facts in the instant case. It is the contention of the appellee that, at all times after the rescission, she held the property as bailee for the appellant until it was taken from

her on a writ of replevin. The temporary use of the coat in one or two instances, as admitted by her, should not, under the record, be held a waiver of her right to rescind, or a breach of her duty as bailee after such rescission.

The case is not free from doubt upon the fact side; but, upon an examination of the entire record, we are disposed to concur in the conclusion of the trial court, and the decree appealed from is, therefore,—*Affirmed.*

EVANS, STEVENS, ALBERT, MORLING, KINDIG, WAGNER, and GRIMM, JJ., concur.