## MARS v. HERMAN.

No. 174.

Municipal Court of Appeals for the District of Columbia.

May 5, 1944.

352

Stanley I. Posner, of Washington, D. C. (Henry J. Fox, of Washington, D. C., on the brief), for appellant.

Mrs. Cecil Gross Gould, of New York City, by leave of Court, also appeared as counsel for appellant.

P. Bateman Ennis, of Washington, D. C., for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

RICHARDSON, Chief Judge.

Appellee, plaintiff below, claimed damages for breach of warranty. A verdict was rendered in her favor, judgment was entered, and the defendant has appealed. The parties will be designated as in the trial court.

Defendant was in the business of selling furnishings and equipment, chiefly to hotels, apartment buildings, and institutions. He dealt directly with manufacturers and was able to sell at lower than store prices. While negotiating a sale of rugs and furnishings for the apartment building where plaintiff resided, defendant's salesman was interviewed by plaintiff. He agreed to supply carpets for her apartment. Unable to furnish one satisfactory to her, he suggested that she select a carpet at a store and obtain the number and identifying description from the tag; he would then procure it from the manufacturer.

Plaintiff selected a carpet at a local store where the quoted price was $7.95 per yard. Defendant's salesman offered to obtain it for her at $5.66 per yard. Quoting plaintiff's testimony:

"I said to him, 'Do you think you will be able to take care of this order?' and he said, 'Yes.' I asked him what sort of carpet he thought it was, and he said it was fine carpet, a very good grade of carpet, and should give me very satisfactory wear; that it was made by the Karagheusian Company, who made Gulistan rugs, and no doubt I had heard of them before."

Carpet corresponding to the number, pattern and color was ordered by defendant, and delivered at plaintiff's apartment about February, 1941. It had been in use two and one-half years before suit was filed. Prior thereto plaintiff had noticed that the carpet had faded, and that one spot in the living room was badly worn. No claim is made that the carpet delivered differed from that selected by plaintiff.

Plaintiff claims that the quoted statement of defendant's representative was an express warranty of the serviceable quality of the carpet; she also claims that an implied warranty was created by the Uniform Sales Act, Code of 1940, §§ 28—1112, 28—1113.

Plaintiff's testimony as to the alleged statement by defendant's representative was denied by him, but in considering the correctness of the verdict we must assume the truth of plaintiff's statement.

Numerous questions were discussed by counsel, but in our view of the case only two need be considered.

First, was there any evidence upon which the jury could base an award of damages? No proof directed to any measure of damages was offered, nor, in our opinion, was any evidence produced from which the jury could reasonably compute the amount.

A small section of the carpet which had been used was produced for comparison with a small unused portion cut from the original carpet when it was delivered From this it appeared that the used part, exposed to the light, had appreciably faded The worn spot in the living room carpet was

described but was not and perhaps could not be conveniently produced in court. The amount paid for the carpet was stated, and the jury awarded approximately one-half of this amount as damages.

Section 28—1507, Code of 1940 (Par. 7), provides:

"In the case of breach of warranty of quality, such loss, in the absence of special circumstances showing proximate damage of a greater amount, is the difference between the value of the goods at the time of delivery to the buyer and the value they would have had if they had answered to the warranty."

■ There being no special circumstances showing proximate damage in a different or greater amount, the evidence should conform to this statutory rule. The jury's appraisement must be based upon evidence, not speculation. Here, although the conceded retail price of the carpet may have been evidence of its value at the time of delivery had its quality answered to the warranty, there was no evidence which, if found to be deficient in quality, would aid in determining its actual value at that time.

As there must be a reversal and remand for a new trial, the disputed issue, whether there was a breach of an express or implied warranty, should be considered now.

### Express Warranty

The Uniform Sales Act (Code 1940, § 28—1112) defines an express warranty as "Any affirmation of fact or any promise by the seller relating to the goods." And, adopting the generally recognized rule, it states: "No affirmation of the value of the goods, nor any statement purporting to be a statement of the seller's opinion only shall be construed as a warranty."

In Williston on Sales, Rev. Ed., Sec. 971A, it is said:

"There are some matters which, even though asserted positively, are in their nature so dependent on individual opinion that, no matter how positive the seller's assertion, it is not held to create a warranty. Such assertions as that things are fine or valuable, or better than productions of rival makers, are of this sort."

The rule is illustrated in Keenan v. Cherry & Webb, 47 R.I. 125, 131 A. 309, 310, and in Brandenberg v. Samuel Stores, Inc., 211 Iowa 1321, 235 N.W. 741, 742, 77 A.L.R. 1161, both involving the construction of the above section of the Uniform Sales Act in the sales of fur coats. In the first case the coat, represented as "a good coat," one that would "wear very good," was improperly sewed and the skins tore and could not be repaired; in the latter plaintiff had been told by the salesman she "would get a number of years' service out of the coat, it is an A-No. 1 fur coat", but the coat became badly worn and unsightly after two months' use. Neither statement was held to be an express warranty.

■ Here plaintiff asked the salesman's opinion, and we regard his reply as an expression of opinion and not an assertion of fact. This view finds support in the circumstance that his statement did not refer to a particular piece of carpet but to a certain product of a rug maker whose name he mentioned and whose reputation was, he assumed, known to plaintiff.

### Implied Warranty

Whether there was an implied warranty, its nature and extent, depend upon the applicable provisions of the Uniform Sales Act, enacted for this jurisdiction on March 17, 1937, D.C.Code 1940, § 28—1101 et seq. Three paragraphs must be considered:

"(1) Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be reasonably fit for such purpose."

"(2) Where the goods are bought by description from a seller who deals in goods of that description (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be merchantable quality. * * *

"(4) In the case of a contract to sell or sale of a specified article under its patent or other trade name, there is no implied warranty as to its fitness for any particular purpose." D.C.Code 1940, § 28—1115.

■■ Here the carpet was for use in the usual apartment, occupied for residence purposes by a small family. The fitness for a known purpose implied under Paragraph 1 was, therefore, fitness for general use. There were no special conditions requiring a carpet of unusual specifications, or one

354

of other than a quality reasonably fit for its purpose.

The "particular purpose for which the goods are required" (Paragraph 1) may be this general purpose only.[1] When this is so the exclusion of an implied warranty of fitness for a particular purpose found in Paragraph 4 is inapplicable. " 'Particular purpose', as used in paragraph '4' means a usage other, or different (in kind or extent), than the ordinary uses the article was made to meet."[2]

Plaintiff also claimed, and we think correctly,[3] that the sale was by description. But we do not find that the evidence was of the character required to support a finding that the carpet was not of "merchantable quality" within the intent of this provision. In Keenan v. Cherry & Webb, supra, it was said:

"The warranty of merchantability was that the coat was fit to wear, not for any particular length of time or satisfactorily to the buyer, but to wear as an article of apparel."

Although "merchantable" has frequently been defined as fitness for the customary use of the article sold,[4] it is to be noted that the lack of merchantable quality in cases expressing this view was apparent upon delivery, or upon an attempt to put into use, or so soon thereafter that the time elapsed may be regarded as a "testing period."

The issues to be submitted to the jury involve the existence of those conditions set forth in Paragraph 1 of the Sales Act. That the purpose for which the carpet was bought was known to defendant was not questioned. But plaintiff has the burden of proving that in making the purchase she relied on the seller's skill or judgment, and that the carpet was not reasonably fit for its known purpose. This does not mean that the carpet should have been of fine quality, or even that it be as good as the average carpet of its grade.

Instructions to the jury should take into consideration such evidence as may be offered concerning the durability of carpet of the period and comparable in price with that purchased by plaintiff.[5] One cannot assume that an article purchased at one time or for one price will possess the qualities of a similar article used for the same purpose purchased at another period or costing several times that amount. In our opinion the warranty may well be expressed as a requirement that the carpet must have been of not less than the fair minimum grade or quality of typical carpets of the price range at the time of the sale.

Reversed and remanded for new trial.

[1] Giant Mfg. Co. v. Yates-American Mach. Co., 8 Cir., 111 F.2d 360; Brandenberg v. Samuel Stores, Inc., supra; Keenan v. Cherry & Webb, supra; McNeil & Higgins Co. v. Czarnikow-Rienda Co., D.C., S.D.N.Y., 274 F. 397; Williston on Contracts, Rev.Ed. Sec. 989.

[2] Giant Mfg. Co. v. Yates-American Mach. Co., supra [111 F.2d 365]; Iron Fireman Coal Stoker Co. v. Brown, 182 Minn. 399, 234 N.W. 685; Sperry Flour Co. v. DeMoss, 141 Or. 440, 18 P.2d 242, 90 A.L.R. 406, Annotation 410.

[3] Sperry Flour Co. v. DeMoss, supra; Ryan v. Progressive Grocery Stores, 255 N.Y. 388, 175 N.E. 105, 74 A.L.R. 339; Naumann v. Wehle Brewing Co., 127 Conn. 44, 15 A.2d 181; Dow Drug Co., v. Nieman, 57 Ohio App. 190, 13 N.E. 2d 130; D'Onofrio v. First National Stores, Inc., 68 R.I. 144, 26 A.2d 758.

[4] Williston on Contracts, Rev.Ed. Sec. 989; American Tank Co. v. Revert Oil Co., 108 Kan. 690, 196 P. 1111; Outhwaite v. A. B. Knowlson Co., 259 Mich. 224, 242 N.W. 895; Dunbar Bros. Co. v. Consolidated Iron-Steel Mfg. Co., 2 Cir., 23 F.2d 416, 419.

[5] Outhwaite v. A. B. Knowlson Co., supra.