Ronald RAIMBEAULT et al.

v.

TAKEUCHI MANUFACTURING
(U.S.), LTD. et al.

No. 99–529–Appeal.

Supreme Court of Rhode Island.

May 23, 2001.

Heath Comley, Providence, for Plaintiff.

Gerald DeMaia, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

This case came before the Court for oral argument on April 10, 2001, pursuant to an order that directed the parties to appear in order to show cause why the issues raised by this appeal should not be summarily decided. After hearing the arguments of counsel and examining the memoranda filed by the parties, we are of the opinion that cause has not been shown and that the issues raised by this appeal should be decided at this time. The facts insofar as pertinent to this appeal are as follows.

Ronald Raimbeault (Raimbeault) owned a company that was in the business of renting construction equipment. On occasion, Raimbeault would demonstrate the use of the equipment to customers. On January 14, 1991, shortly after dusk, Raimbeault gave a demonstration of a track-driven Takeuchi compact excavator, model TB 800, to a customer, Frederick Bassi (Bassi). The excavator has a "cab" capable of rotating 360 degrees, independent of the excavator's track-drive system. On the particular evening involved herein, the ground was covered with snow and ice. To demonstrate the reach of the excavator's backhoe, Raimbeault backed the excavator to the edge of an embankment.

He then rotated the cab several times and demonstrated the backhoe. The demonstration lasted approximately fifteen minutes.

At the conclusion of the demonstration, Raimbeault failed to recognize that he had rotated the cab only 180 degrees. As a result, the cab faced the back of the excavator and toward the embankment. The front of the excavator had an attached dozer blade. However, the excavator's lever controls were oriented with the front of the excavator. Thus, if one pulled the levers backward, the excavator would move in the direction opposite from the side of the dozer blade. Not realizing that the cab was facing the opposite direction from the front blade side of the excavator, Raimbeault pulled backward on the control levers, intending to back away from the embankment. Instead, the excavator lurched toward the embankment. The excavator became unstable on the embankment and began to skid on the ice. At that time, Raimbeault jumped from the excavator down to the bottom of the embankment. Even though releasing the levers would normally have caused the excavator to stop moving, the excavator apparently lost stability on the embankment, causing it to fall. The excavator slid down the embankment. A portion of the excavator landed on Raimbeault's foot. Raimbeault suffered back, shoulder, head, and neck injuries.

On January 13, 1994, Raimbeault, his wife, Ida Raimbeault, and his son, Brian Raimbeault (hereinafter collectively referred to as plaintiffs), filed a products liability and negligence action (the negligence action was predicated on negligent design and failure to warn) against Takeuchi Manufacturing (U.S.), Ltd., Takeuchi

America Manufacturing, Ltd., Takeuchi Manufacturing Co., Ltd., and John Doe, alias (hereinafter collectively referred to as defendants).[1] The plaintiffs alleged that the excavator lacked adequate safeguards and warnings. A trial was held in the Superior Court. At trial, Raimbeault testified about the events of the accident. He testified that he had mistakenly pressed the levers backward and that he had not realized that he had been disoriented after having previously rotated the cab several times. Raimbeault also testified that he had not noted that the dozer blade was not in front of him. He admitted that he had told an investigator that "the accident was caused solely by my losing control of [the excavator] due to the icy conditions."

Next, Bassi testified. He corroborated the events of the accident. Doctor Wallace Gonsalves (Dr. Gonsalves) and Richard Otrando (Otrando) also testified at trial. Doctor Gonsalves testified about the extent and treatment of Raimbeault's injuries. Otrando, the accountant for Raimbeault's business, testified about Raimbeault's lost salary and lost benefits resulting from the accident.

Marc Richman (Richman), a retired professor from Brown University, who had taught in the engineering department, testified as plaintiffs' expert witness. Richman held a doctor of science from the Massachusetts Institute of Technology, where he was also an instructor in the metallurgy department. He testified that he had experience in the maintenance of track equipment during his employment with the United States Army. Richman also testified that he had operated a Takeuchi TB 800 excavator in 1998. At that time, he noticed that the excavator had

---

1. The plaintiffs initially filed a breach of warranty claim as well, but that claim later was withdrawn.

decals detailing the operation of the levers and the movement of the backhoe. While at Brown University, Richman had taught courses dealing with warnings on the operation of equipment. He testified that the warnings on the Takeuchi TB 800 did not state clearly what would happen if an operator turned the cab to face the rear and then pulled the levers backward. Richman concluded that the design of the excavator was flawed because it did not take into account a momentary lapse in memory by the operator about which direction he was facing. Richman offered design improvement suggestions, such as a warning system that would light up and force the operator to check the direction or a compass-like device with an arrow perpetually pointing to the dozer blade. He further testified that the instruction manual was not clear about the fact that forward meant in the direction of the dozer blade.

After Richman finished testifying, the trial justice decided to exclude his testimony. To support his decision, the trial justice noted that Richman did not have any experience with track-driven machinery. He further noted that Richman had no experience in designing cabs for track-driven machinery and that he had limited experience with warnings and instructions in general. The trial justice concluded that Richman's opinions were the product of the instant litigation and not the result of scientific research or experimentation. Consequently, he found that Richman lacked the skills to qualify as an expert and that his opinions were pure speculation. Additionally, the trial justice found that the proximate cause of Raimbeault's injuries was Raimbeault's own negligence in operating the excavator.

The defendants then moved for a judgment as a matter of law. They argued that because of the exclusion of Richman's testimony, plaintiffs had failed to put forth any competent evidence on negligent design or defect. The trial justice granted defendants' motion. He found that plaintiffs had not presented any evidence on the standard of care for excavator design. With regard to the products liability action, the trial justice found that plaintiffs did not demonstrate that Raimbeault had received the excavator in substantially the same condition as it was when it left the hands of the manufacturer. He further noted that plaintiffs were required to produce evidence that the excavator was defective and unreasonably dangerous and that they had failed to do so. In addition, the trial justice ruled that there was no evidence to indicate that a failure to provide a warning had caused the accident. Moreover, he found that Raimbeault had assumed the risk of injury by moving the excavator very close to the embankment and that his mistake in becoming disoriented was the proximate cause of his accident. Final judgment in favor of defendants was entered on January 26, 1999. The plaintiffs timely appealed.

To support their appeal, plaintiffs argued that the trial justice erred in excluding Richman's testimony. In addition, they argued that the trial justice erred in granting defendants' motion for judgment as a matter of law and that he erred in finding that Raimbeault had assumed the risk. The plaintiffs assert that since the expert testimony of Richman sufficiently addressed each of the above issues, the case could have been decided by the jury. We address each of plaintiffs' claims *seriatim.*

## I

### Expert Testimony

Rule 702 of the Federal Rules of Evidence governs testimony by experts in the federal courts. Rule 702 provides as follows:

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed.2d 469, 480 (1993), the United States Supreme Court held that, under the Federal Rules of Evidence, a trial justice had to "ensure that any and all scientific testimony or evidence admitted [was] not only relevant, but [also] reliable." The Supreme Court found that Rule 702 "clearly contemplate[d] some degree of regulation of the subjects and theories about which an expert [could] testify." *Id.* In essence, a trial justice must ensure that "an expert's testimony both rest[ed] on a reliable foundation and [was] relevant to the task at hand." *Id.* at 597, 113 S.Ct. at 2799, 125 L.Ed.2d at 485. Thus, *Daubert* created an obligation on the part of trial justices to act as "gatekeepers:" their role is to insure that proposed experts are qualified and that all scientific testimony is not only relevant, but also reliable. *See id.* at 589–97, 113 S.Ct. at 2794–99, 125 L.Ed.2d at 480–85.

■■■ This Court has recognized the applicability of *Daubert* to situations in which scientific testimony is proposed in Rhode Island state courts (that is, where Rule 702 of the Rhode Island Rules of Evidence comes into play). *See DiPetrillo v. Dow Chemical Co.*, 729 A.2d 677 (R.I. 1999); *Gallucci v. Humbyrd*, 709 A.2d 1059 (R.I.1998); *State v. Quattrocchi*, 681 A.2d 879 (R.I.1996); *State v. Morel*, 676 A.2d 1347 (R.I.1996); *In re Odell*, 672 A.2d 457 (R.I.1996); *see also Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141, 119 S.Ct. 1167, 1171, 143 L.Ed.2d 238, 246

(1999) (concluding that "*Daubert*'s general holding—setting forth the trial judge's general 'gatekeeping' obligation—applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge") (citing Fed.R.Evid. 702). Rule 702 of the Rhode Island Rules of Evidence provides as follows:

"Testimony by experts.—If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion."

An expert need not have a license in a narrow specialty, nor hold a particular title, as long as his or her " 'knowledge, skill, experience, training, or education' " can deliver a helpful opinion to the factfinder. *See Owens v. Payless Cashways, Inc.*, 670 A.2d 1240, 1244 (R.I.1996) (quoting R.I. R. Evid. 702). Moreover, scientific expert evidence is admissible only if it is "relevant, appropriate, and of assistance to the jury." *DiPetrillo*, 729 A.2d at 686. "[O]nce an expert has shown that the methodology or principle underlying his or her testimony is scientifically valid and that it 'fits' an issue in the case, the expert's testimony should be put to the trier of fact to determine how much weight to accord the evidence." *Id.* at 689–90 (citing *Ambrosini v. Labarraque*, 101 F.3d 129, 134 (D.C.Cir.1996)). The critical inquiry for deciding whether to admit expert testimony is whether the expert testimony reflects scientific knowledge that can be tested by scientific experimentation and whether the expert testimony logically advances a material aspect of the plaintiff's case. *See id.* at 689. "This Court will not disturb a trial justice's ruling on the admissibility of expert testimony absent an abuse of discretion." *Gallucci*, 709 A.2d at

1064 (citing *Frias v. Jurczyk*, 633 A.2d 679, 683 (R.I.1993); *State v. Capalbo*, 433 A.2d 242, 247 (R.I.1981)).

We hold that the trial justice did not abuse his discretion by excluding Richman's testimony. We find that Richman did not have the "knowledge, skill, experience, training, or education" required by our Rule 702, nor was his testimony "relevant, appropriate, [or] of assistance to the jury," *DiPetrillo*, 729 A.2d at 686; thus, Richman's testimony was properly excluded.

■ With regard to the "knowledge, skill, experience, training, or education" requirement set forth in Rule 702, we note that Richman had no design experience with regard to track-driven machinery. Specifically, he had no experience with designing cabs for track-driven machinery. Furthermore, Richman had limited experience with warnings and instructions in general, and no experience with warnings and instructions as related to track-driven excavators. Indeed, he had never even designed a warning for a commercially marketed product in connection with the actual marketing of the product. Moreover, Richman was not a human factors engineer and he had no training in the area of human factors. Thus, Richman did not have the "knowledge, skill, experience, training, or education" required by Rule 702.

■ Similarly, Richman's testimony was not "relevant, appropriate, [or] of assistance to the jury." *DiPetrillo*, 729 A.2d at 686. Much of Richman's testimony was conclusory in stating that the excavator was unreasonably dangerous because of improper warnings or safeguards. However, at *no* point during his testimony did Richman ever disclose specific scientific reasons for his findings that the excavator was unreasonably dangerous. *See Rodriquez v. Kennedy*, 706 A.2d 922, 924 (R.I.

1998) (noting that "an expert's opinion must be predicated upon facts legally sufficient to form a basis for his conclusion") (quoting *Alterio v. Biltmore Construction Corp.*, 119 R.I. 307, 312, 377 A.2d 237, 240 (1977)); *see also DiPetrillo*, 729 A.2d at 689 (noting that expert testimony must reflect scientific knowledge which can be tested by scientific experimentation and which logically advances a material aspect of the plaintiff's case).

Accordingly, we find that the trial justice did not abuse his discretion in excluding Richman's testimony.

## II

### Judgment as a Matter of Law

■ Next, plaintiffs argue that the trial justice erred in granting defendants' motion for judgment as a matter of law.

"The standard for granting a motion for judgment as a matter of law is the same as that applicable to its precursor, a motion for a directed verdict. *See, e.g., K & K Construction Inc. v. City of Warwick*, 693 A.2d 1038, 1039 n. 4 (R.I. 1997) * * *; Super. R. Civ. P. 50 Advisory Committee Notes. On such a motion, the trial justice[:]

> 'considers the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination.' *DeChristofaro v. Machala*, 685 A.2d 258, 262 (R.I. 1996).

In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court 'is bound by the same rules and [standards] as the trial justice.' *Hoffman v. McLaughlin Corp.,* 675 A.2d 404, 405 (R.I.1996)." *Mellor v. O'Connor,* 712 A.2d 375, 377 (R.I.1998).

▮▮▮▮ In a products liability action, a plaintiff must prove:

"(1) that there was a defect in the design or construction of the product in question; (2) that the defect existed at the time the product left the hands of * * * defendant; (3) that the defect rendered the product unreasonably dangerous, and by unreasonably dangerous it is meant that there was a strong likelihood of injury to a user who was unaware of the danger in utilizing the product in a normal manner; (4) that the product was being used in a way in which it was intended at the time of the accident; and (5) that the defect was the proximate cause of the accident and plaintiff's injuries." *Crawford v. Cooper/T. Smith Stevedoring Co.,* 14 F.Supp.2d 202, 211 (D.R.I.1998); *see also Ritter v. Narragansett Electric Co.,* 109 R.I. 176, 188–92, 283 A.2d 255, 261–63 (1971).

Here, no evidence was submitted by plaintiffs about the condition of the excavator at the time it was manufactured. Indeed, Raimbeault's own testimony suggested that the excavator was not in the same condition as when he had first received it, because of the dents, scrapes, and other alterations caused by the people who had rented the excavator from him. In addition, plaintiffs did not put forth any evidence that the absence of warnings in the excavator cab was the proximate cause of the accident and Raimbeault's injuries. The trial justice noted that:

"the facts of this case as testified to really present one and only one conclusion as to proximate cause. In the court's judgment, that would be the negligence of this plaintiff."

Raimbeault himself testified that he had told an investigator that "the accident was caused solely by my losing control of [the excavator] due to the icy conditions." Without putting forth any evidence about the condition of the excavator at the time of its manufacture (that is, at the time it left defendants' hands) or about proximate cause (that is, that the failure to warn had caused Raimbeault's accident and injuries), plaintiffs may not maintain their products liability action. *See Simmons v. Lincoln Electric Co.,* 696 A.2d 273, 276 (R.I.1997) ("To survive a motion for a [judgment as a matter of law], [plaintiff] had to introduce evidence to show that the * * * machine was defective when it left [defendant's] hands and that any such defect was the proximate cause of [plaintiff's] injuries.") (citing *Plouffe v. Goodyear Tire & Rubber Co.,* 118 R.I. 288, 295, 373 A.2d 492, 496 (1977)).

▮▮▮▮ The plaintiffs also had claims for negligent design and failure to warn about the defect. In a negligent design claim, "one can only be liable in negligence if the plaintiff[s] ha[ve] met [their] burden of introducing credible evidence that the defendant[s] knew, or had reason to know, of a defective design or that [they] w[ere] negligent in failing to test or inspect the product prior to sale." *Thomas v. Amway Corp.,* 488 A.2d 716, 721 (R.I.1985). Here, because Richman's testimony was properly excluded, plaintiffs introduced no evidence that defendants had not complied with the applicable standard of care in either designing or testing the excavator.

▮▮▮▮ We now turn to the trial justice's granting of judgment as a matter of law on plaintiffs' failure to warn claims. "In negligence, the defendant only has a duty to warn if he had reason to know about the product's dangerous propensities

which caused plaintiff's injuries. * * * Under strict liability, a seller need only warn of those dangers that are reasonably foreseeable. If he does not provide such a warning, then the product is rendered defective." *Id.* at 722 (citing *Scittarelli v. Providence Gas Co.,* 415 A.2d 1040, 1043 (R.I.1980), and *Borel v. Fibreboard Paper Products Corp.,* 493 F.2d 1076, 1088–89 (5th Cir.1973)). With regard to plaintiffs' products liability action, it is reasonably foreseeable that an excavator with a rotating cab could cause its operator to lose his sense of direction and injure himself or others by driving in an unintended direction. Moreover, it is reasonably foreseeable that an excavator might be used on hills or other precipitous inclines upon which an unintentional change in direction could cause injury (even if the excavator were operated at its typical speed, that is, less than one mile per hour).

 However, "[t]he doctrine of assumption of * * * risk is an affirmative defense [that, if proven,] absolve[s] a defendant of liability for having created an unreasonable risk." *Walker v. Jackson,* 723 A.2d 1115, 1117 (R.I.1999) (quoting *Rickey v. Boden,* 421 A.2d 539, 543 (R.I. 1980)). To assume a risk of harm, a plaintiff must " 'know[ ] of the existence of the risk and appreciate[ ] its unreasonable character.' " *Id.* Whether a risk of harm has been assumed by plaintiff is a question for a trier of fact. *See id.* "If the record suggests, however, that the factfinder can draw only one rational inference from the evidence on this issue, then the trial justice should grant a [judgment as a matter of law] motion directed to this issue." *Id.* (citing *Hennessey v. Pyne,* 694 A.2d 691, 699 (R.I.1997)).

 At trial, Raimbeault testified that he knew that the excavator levers were oriented toward the dozer blade side of the excavator. He also testified that he had demonstrated this type of equipment once or twice a month for approximately five years (totaling 60 to 120 times in all). In addition, Raimbeault testified that he was aware that using the excavator on the edge of an embankment required extra precautions. Thus, the trial justice did not err in granting judgment as a matter of law on plaintiffs' failure-to-warn claims. The absence of a warning on the excavator did not constitute an unreasonably dangerous defect because Raimbeault was aware of the special hazards inherent in his demonstration. *See Filosa v. Courtois Sand and Gravel Co.,* 590 A.2d 100, 103–04 (R.I.1991) (decedent, the owner of a building who was repeatedly warned not to go into the building because of the danger of a wall collapsing, assumed the risk of injury by working behind it); *Drew v. Wall,* 495 A.2d 229, 232 (R.I.1985) (decedent who was aware of danger posed by running internal-combustion engine in enclosed space assumed the risk of asphyxiation by restarting engine after becoming dizzy and after reentering pit); *Rickey,* 421 A.2d at 544 (woman assumed risk of injury when in response to several options, she chose to ascend narrow stairway with no handrail).

### Conclusion

For the reasons stated, the plaintiffs' appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers in the case are remanded to the Superior Court.

Justice BOURCIER did not participate.