Gerald K. ADAMS

v.

UNO RESTAURANTS, INC. d/b/a
Pizzeria Uno Restaurant &
Bar.

No. 2000–266–Appeal.

Supreme Court of Rhode Island.

April 15, 2002.

defendant, Uno Restaurants, Inc. d/b/a Pizzeria Uno Restaurant & Bar, had wrongfully terminated the plaintiff's employment in violation of the Whistleblowers' Protection Act, G.L.1956 chapter 50 of title 28.[1] It awarded Adams $7,500 for damages. The trial justice, in ruling upon the defendant's Super.R.Civ.P. 50 motion for judgment as a matter of law, upon which decision had been reserved, denied the defendant's motion, upheld the jury's finding on the defendant's liability, but set aside the jury's award of damages to the plaintiff.

The plaintiff timely appealed the trial justice's setting aside of the jury's damages award, and the defendant timely appealed the trial justice's denial of its Rule 50 motion for judgment as a matter of law. After a prebriefing conference before a single justice of this Court, the parties were ordered to show cause why this appeal should not summarily be decided. After hearing their arguments and reading their legal memoranda, we conclude that cause has not been shown, and we proceed summarily to decide the appeal.

Gerald K. Adams, pro se.

Andrew B. Prescott, Providence, for Defendant.

Present: LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this case, a Superior Court jury, after trial, returned a verdict in favor of the plaintiff, Gerald K. Adams, finding that the

### Facts

On May 20, 1996, the plaintiff, who had been employed by the defendant for several years, arrived for his nighttime line cooking shift at the defendant's Warwick restaurant. Shortly after his shift began, the plaintiff noticed that the kitchen floor was saturated with a foul-smelling liquid coming from drains and backing up water onto the floor. He complained of illness and went home, at which time he contacted the Department of Health about the drainage problem in the restaurant's kitchen.

---

1. The Rhode Island Whistleblowers' Protection Act, G.L.1956 § 28-50-4(a) provides that:
   "A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both within three (3) years after the occurrence of the alleged violation of this chapter."

A Department of Health representative visited the restaurant that evening and noticed that the floor drains were backed up and that the floor was wet and slippery. She ordered the kitchen staff to dispose of all the food they had touched with their bare hands and closed the restaurant for the night, leaving instructions to sanitize the kitchen area and clear all the drains. She also inquired about which employee went home sick. The restaurant reopened the next day after sanitizing the kitchen.

On May 22, 1996, two days after the incident, the plaintiff, who was not scheduled to work that day, returned to the restaurant curious to determine whether there was any hostility toward him resulting from his having called the Department of Health. The plaintiff testified that he was summarily ordered by David Badot, the restaurant's manager, to come into his office and that Badot proceeded to shout at him while inquiring whether he had contacted the Department of Health. The plaintiff testified that he shouted back at Badot and acknowledged that he had indeed called the Department of Health. Badot then accused the plaintiff of stealing one of the defendant's softball team shirts and of taking a work schedule home. Badot then left his office, and the plaintiff followed him out into the general cooking area, where other employees were present. The shouting match between Badot and the plaintiff continued and in the course thereof, the plaintiff told Badot that he "was going to follow him back to Massachusetts on this, and [he] was going to blow the intelligence out of his head."[2] The plaintiff then left the restaurant. Badot claimed to have perceived the plaintiff's words as threatening and instructed

an employee to call the police. When the plaintiff later heard that the police were looking for him, he voluntarily went to the Warwick police station, whereupon he was then charged with disorderly conduct, arraigned, and pled not guilty. No trial on the charge ensued. The charge was later filed. One year later his record of arrest and charge automatically was expunged pursuant to the case filing statute.

Shortly thereafter, the plaintiff commenced this civil action against the defendant alleging therein that he had been unlawfully terminated only because he had notified the Department of Health regarding the unsanitary kitchen conditions existing at the defendant's Warwick Pizzeria Uno Restaurant & Bar.

Following a Superior Court jury trial, the jury returned a general verdict in favor of the plaintiff and awarded him damages in the amount of $7,500 as permitted by the state's Whistleblowers' Protection Act.

### Analysis

#### The Defendant's Motion for Judgment as a Matter of Law

■ "The standard for granting a motion for judgment as a matter of law is the same as that applicable to its precursor, a motion for a directed verdict." *Martinelli v. Hopkins*, 787 A.2d 1158, 1165 (R.I.2001) (quoting *Raimbeault v. Takeuchi Manufacturing (U.S.), Ltd.*, 772 A.2d 1056, 1062 (R.I.2001)). When considering such a motion, the trial justice examines:

> "the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draws from

---

**2.** According to the defendant's company policy, threats against customers, supervisors, or fellow employees constitute grounds for immediate termination. Badot, Uno asserts,

fired the plaintiff on May 22, 1996, the day of the threat, and listed the threat on the termination sheet as the reason for his action.

the record all reasonable inferences that support the position of the nonmoving party. * * * If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion for [judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." *Id.* (quoting *Raimbeault,* 772 A.2d at 1062).

"If, on the other hand, no relevant issues of fact exist and defendant is entitled to judgment as a matter of law, then the trial justice should grant the motion and dismiss the complaint." *Id.* (quoting *Swerdlick v. Koch,* 721 A.2d 849, 856 (R.I.1998)). "In reviewing a trial justice's decision on a motion for judgment as a matter of law, this Court 'is bound by the same rules and [standards] as the trial justice.'" *Id.* (quoting *Raimbeault,* 772 A.2d at 1063).

With respect to the defendant's liability, the trial justice aptly decided that a reasonable jury could have concluded that the plaintiff was fired by the defendant in retaliation for his having called the Department of Health. Accordingly, he denied the defendant's Rule 50 motion as to liability. The trial justice noted in doing so:

"Now as to liability under a Rule 50 standard, I am compelled to deny it because a jury could believe that Mr. Badot provoked Mr. Adams in his office. * * * The jury could also infer that the very fact of Mr. Adams' complaint to the Department of Health was the real grounds for terminating Mr. Adams, and choose to believe that rather than the reasons stated by Pizzeria Uno, that his termination was making the threat."

After examining the evidence in the light most favorable to the plaintiff, the trial justice decided that a reasonable jury could have found that Badot's actions in badgering the plaintiff and then having him arrested were a pretext for retaliating against the plaintiff for having called in the Department of Health. The trial justice concluded that a reasonable jury certainly could have found that the confrontation between Badot and the plaintiff was designed by Badot to provoke a reaction from the plaintiff that would serve as Badot's excuse to fire him, even though that was merely a pretext for the real reason—the plaintiff's call to the Department of Health. We are satisfied that the trial justice did not err in denying the defendant's Rule 50 motion as to its liability.

## The Plaintiff's Damages

Although the plaintiff at trial did not specifically quantify his damages, he did testify that it took him eleven days to find employment after his being terminated by the defendant. In addition to his economic damages, he claimed and testified that he suffered emotional distress and humiliation as a result of the defendant's wrongful conduct in initiating criminal proceedings against him that resulted in the loss of his National Guard security clearance and disqualification from an overseas National Guard mission. He offered no expert medical testimony in support of his claim for emotional distress.

We have long required that a plaintiff seeking to recover a monetary award for the tortious infliction of emotional distress must establish, among other elements, that he or she experienced physical symptoms of their alleged emotional distress, and that expert medical testimony is needed to support the existence of a causal relationship between the defendant's wrongful conduct and his or her claimed emotional distress. *Swerdlick v. Koch,* 721 A.2d 849, 862–63 (R.I.1998); *Vallinoto v. DiSandro,* 688 A.2d 830, 838–40 (R.I.1997); *Reilly v. United States,* 547 A.2d 894, 896–99 (R.I.

1988). We have done so "to safeguard against bogus or exaggerated emotional-damage claims." *Hawkins v. Scituate Oil Co.*, 723 A.2d 771, 773 (R.I.1999).

■ On the particular case facts before us, we do not find the absence of expert medical testimony to support the plaintiff's claim for damages resulting from his alleged emotional distress and humiliation to be fatal to that portion of his claim for damages. Unlike the usual case where a claim for emotional distress and humiliation is oftentimes made without objective facts to substantiate such a claim, expert medical testimony is deemed necessary to assist the factfinder in determining not only the validity but also the causal relationship of any emotional distress. In this case, the trial jury had before it clear objective and uncontroverted evidence concerning the plaintiff's complaint to the Warwick police; his arrest by the Warwick police; the criminal charge for disorderly conduct made against him; his arraignment on that charge; the revocation of his military security clearance and the resulting loss of his opportunity to accompany his National Guard unit in an overseas mission to Germany.[3] From such objective and uncontradicted evidence, we believe that an ordinary lay person or trial juror would be capable of determining without the aid of expert medical testimony whether emotional distress and humiliation could ordinarily and naturally follow from such events. Trial jurors, we are satisfied, do not leave their common sense in the cloakroom when they come to sit in the courtroom.

In *Hawkins*, we permitted recovery for emotional distress without expert medical evidence of physical symptomology and without supporting medical expert opinion pertaining to its causation because the plaintiffs' emotional distress claims in that case could be supported by the defendant's tortious interference with the use and enjoyment of the plaintiffs' residence.[4]

In this case, the trial evidence clearly reveals that the plaintiff Adams was particularly troubled over his being arrested for disorderly conduct and the resulting loss of his security clearance as a National Guard reservist. That loss of security clearance subsequently prevented him from participating with his National Guard unit in an overseas mission to Germany. The trial justice apparently noted the significance of those matters upon the plaintiff's emotional well-being, when in overruling defense counsel's objection to the plaintiff's testimony concerning those matters he noted: "I'll allow it. To him it's very important. Whether it is to you or the jury remains to be seen."

■ In passing upon and granting the defendant's Rule 50 motion to set aside the jury's damages award to the plaintiff, the trial justice pondered whether the proximate cause for any damages the plaintiff would otherwise have been entitled to recover had been interrupted when the plaintiff threatened Badot. However, he later acknowledged that the jury could have reasonably concluded from the plain-

---

**3.** The plaintiff aptly summarized the scope of his damages at trial: "So now I'm still fighting through the momentum that they caused on me affecting my civil life, my military career, my standing in the job market."

**4.** In *Webbier v. Thoroughbred Racing Protective Bureau, Inc.*, 105 R.I. 605, 620, 254 A.2d 285, 293 (1969), we approved an award for

humiliation in a false imprisonment action without any supporting expert medical testimony and noted that "[s]ince the injury involved in false imprisonment is in part a mental one, [the plaintiff] is entitled to be compensated for mental suffering and humiliation he experienced * * * [when arrested] in front of the crowd that had gathered."

tiff's testimony that he did suffer actual economic losses and mental anguish from his having been terminated and humiliated by Badot in the presence of the plaintiff's fellow employees as well as from embarrassment stemming from the police visit to his second employer inquiring about the threat made against Badot. He observed also that the jury could reasonably have concluded that the plaintiff's loss of his National Guard security clearance and subsequent inability to participate in overseas missions caused him emotional distress.[5]

In ruling post-trial on the defendant's Rule 50 motion, upon which decision had been reserved, the trial justice was required to examine the trial evidence in the light most favorable to the plaintiff. It appears that he failed to do so. The record discloses that the plaintiff at trial had presented sufficient evidence of his economic loss and emotional distress to support the jury's damage award. Therefore, the trial justice erred in granting the defendant's Rule 50 motion with regard to the trial jury's award of damages to the plaintiff.

### Conclusion

For the reasons set out above, the plaintiff's appeal is sustained, and the defendant's appeal is denied and dismissed. The final judgment of the Superior Court is vacated. The case papers are remanded to that court for entry of an amended final judgment that will include the trial jury's award of damages to the plaintiff in the amount of $7,500.

Chief Justice WILLIAMS did not participate.

---

5. The trial justice's instruction to the jury regarding the question of damages was not objected to, became the law of the case, and stated as follows:

"You will be considering the question of damages only if you find that defendant is responsible for plaintiff's losses under the theories presented. There are a number of kinds of losses for which the law entitles a plaintiff compensation. We call these kinds of losses elements of damages. There is no exact formula as to any of the damages claimed, and you are not allowed to speculate.

"The plaintiff seeks damages for emotional pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and damage to his personal business and reputation. If you determine that defendant fired plaintiff for reporting a violation to the Department of Health, then you may also award him back pay and benefits in the amount that he would have earned at his job had he not been fired. Back pay and benefits include wages or salary, bonuses, and benefits, including health insurance and pension benefits, less his interim earnings from the date plaintiff was fired until today."