**Paula A. BEATON**

v.

**Philip MALOUIN.**

**No. 2003–45–Appeal.**

Supreme Court of Rhode Island.

April 8, 2004.

order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda of the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the appeal at this time.

On January 3, 1997, Paula A. Beaton (Beaton or plaintiff), was traveling west on Route 195 near the northbound and southbound split, when her automobile skidded on the wet surface of the road and ended up perpendicular in the left high-speed lane and middle lane of traffic. Although several drivers managed to successfully avoid colliding with plaintiff's automobile, the defendant, Philip Malouin (Malouin or defendant), came upon plaintiff and struck the rear quarter of her vehicle. As a result of the impact, plaintiff's vehicle spun 180 degrees from its original position. The plaintiff was taken to Rhode Island Hospital, where it was determined that she had suffered fractured ribs, several abrasions and an injured shoulder.

On October 23, 1997, plaintiff filed a negligence action against defendant. A jury trial resulted in a verdict in favor of defendant. The plaintiff's motion for a new trial was denied, and this appeal followed.

Raymond A. Lafazia, Providence, for Plaintiff.

David Edward Maglio, III, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

## O P I N I O N

PER CURIAM.

This case came before the Supreme Court on February 5, 2004, pursuant to an

I

### Expert Testimony

■ On appeal, plaintiff asserts that the trial justice erred in limiting the testimony of plaintiff's expert witness. At trial, plaintiff sought to introduce, as an expert witness, Francis Perry (Perry), a retired engineer for the Rhode Island Department of Transportation. Before Perry took the stand, the trial justice conducted a *voir dire* to determine whether Perry's opinion was based upon sound scientific methodol-

ogy. At the hearing, Perry testified that in his opinion, defendant had a line of sight[1] of approximately 350 feet from his vehicle to plaintiff's vehicle. In forming his opinion, Perry relied upon the highway plans for Route 195, a visual inspection of the scene, and certain assumptions he made about the length of plaintiff's vehicle, the location of the guardrail and the location of oncoming vehicles. Perry calculated the line of sight by diagramming the placement of plaintiff's vehicle onto the highway plans:

"I used a 16–foot long vehicle with its front against the guardrail projecting into the roadway. I then took the rear corner of that vehicle and determined, or drew a line back from which that rear corner could be seen, back along the face of the guardrail. I drew the line, and from anywhere on this line you can see that vehicle past the guardrail * * *."

Although Perry testified that he visually inspected the scene by driving through the area several times, he did not actually measure the roadway and never measured a distance of 350 feet on the highway to determine whether plaintiff's vehicle could have been seen from that distance.

Based upon this testimony, the trial justice found that there was "no real science" upon which Perry's opinion was based:

"It may be that this gentleman is an engineer, but, basically, he made some assumptions. He assumed the tail end of the vehicle was 16 feet from the guardrail. * * * He made assumptions about where the vehicle was in the road; that is, the on-coming vehicle. * * * He

also made an assumption about the driver being two feet in. He made no assumptions about the height of the driver, the height of the vehicle and so on. He flip-flopped on his testimony about what he could see when he was driving. There's no geometry here. There's no math here.

"Would I admit this if someone who was just the average lay person off the street used this same methodology to support the same opinion? I don't think so. The question is whether this is helpful to the jury or whether it's prejudicial, confusing or a waste of time.

"* * * You or I could take a ruler and draw a line and make sure that line was to the side of the wall. What science do we have here? This is not based in any engineering theory."

Pursuant to Rule 403 of the Rhode Island Rules of Evidence,[2] the trial justice excluded all testimony about diagrams or calculations Perry had made upon the highway plans, and she explained that:

"While [Perry] bandies about references to scientific methodology and geometry, his opinion is not truly science based. It's not based on any engineering principles that I could discern. Perhaps his opinion is well researched insofar as the use of the diagrams go, but it's nonetheless an opinion that a lay person could provide based on the same draw-a-line methodology. So, therefore, I'm going to limit his testimony to that which he has perceived and can relate here, and that means his factual observations of the intersection."

---

1. A "line of sight" is how far ahead a driver is able to see as he or she is proceeding on a highway.

2. Rule 403 of the Rhode Island Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

After the trial justice's ruling, Perry returned to the stand and testified that when he drove through the accident scene, he was able to see 350 feet ahead. When questioned by the Court about how he knew the distance was 350 feet, Perry responded that "[he] did some experimentation and some geometric calculation on the highway plans to determine exactly what the line of sight was from [his] position" to a point where plaintiff's vehicle would have been. Because Perry made reference to his calculations, the trial justice immediately granted defendant's motion to strike and instructed the jury to ignore any reference to the 350–foot line of sight. In response, plaintiff's counsel sought permission to withdraw Perry and recall him to testify after Perry again made personal observations of the scene. Based upon counsel's representation that Perry was going to return to the scene and take actual measurements, the trial justice agreed to permit Perry to testify about "his personal knowledge of the distances." Despite this ruling, plaintiff did not recall Perry during his case in chief.

■ Pursuant to Rule 702 of the Rhode Island Rules of Evidence, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of fact or opinion." A witness qualifies as an expert as long as his or her " 'knowledge, skill, experience, training, or education' [can] deliver a helpful opinion to the jury." *Owens v. Payless Cashways, Inc.*, 670 A.2d 1240, 1244 (R.I.1996) (citing *State v. Morales*, 621 A.2d 1247, 1249 (R.I. 1993)). "[S]cientific expert evidence is admissible only if it is 'relevant, appropriate, and of assistance to the jury.' " *Raimbeault v. Takeuchi Manufacturing (U.S.),*

*Ltd.*, 772 A.2d 1056, 1061 (R.I.2001) (per curiam) (quoting *DiPetrillo v. Dow Chemical Co.*, 729 A.2d 677, 686 (R.I.1999)). "The critical inquiry for deciding whether to admit expert testimony is whether the expert testimony reflects scientific knowledge that can be tested by scientific experimentation and whether the expert testimony logically advances a material aspect of the plaintiff's case." *Id.* (citing *DiPetrillo*, 729 A.2d at 689). "This Court will not disturb a trial justice's ruling on the admissibility of expert testimony absent an abuse of discretion." *Skene v. Beland*, 824 A.2d 489, 492 (R.I.2003) (per curiam) (quoting *Raimbeault*, 772 A.2d at 1061).

■ It is undisputed that Perry possessed the requisite training and expertise to render an opinion as an expert witness. He holds a master of science in civil engineering and worked as a registered professional engineer; before he retired, he was employed as an engineer for the Rhode Island Department of Transportation. During the *voir dire*, Perry explained the reasoning and methodology he employed to determine defendant's line of sight on the night of the accident. The trial justice, disturbed by the assumptions upon which Perry's methodology rested, found that Perry's opinion was unsound because it was "not truly science based." We previously have said, however, that expert testimony will be admitted if: (1) it is based upon "scientific knowledge that can be tested by scientific experimentation," and (2) it "logically advances a material aspect of the plaintiff's case." *Raimbeault*, 772 A.2d at 1061. In this case, the trial justice recognized that Perry's line of sight opinion could have been verified or disproved simply by taking actual measurements at the scene. Clearly, proof that established defendant's line of sight was relevant and highly probative of whether defendant was negligent. Perry was an expert witness

whose theory easily could have been tested by scientific evidence, and as such, his testimony should have been presented to the jury. We deem the exclusion of this testimony to be error. The fact that the witness's opinion was based on various assumptions is a factor that goes to the weight of the witness's testimony and not its admissibility. The task of assigning weight, if any, to the opinion of an expert witness, is reserved for the jury.

Finally, we are not persuaded that the evidence should have been excluded pursuant to Rule 403 based on the trial justice's determination that its probative value was outweighed by its prejudicial effect. The trial justice failed to make any finding that the evidence was prejudicial, confusing, misleading, or would result in undue delay. The evidence was highly probative and its exclusion was an abuse of discretion.

## II

### Defendant's Answers to Interrogatories

■ Next, plaintiff asserts that the trial justice erred in refusing to permit counsel to introduce into evidence two answers to interrogatories provided by defendant. The record discloses that defendant testified before the jury that he first saw plaintiff's vehicle from a distance of approximately 80 to 100 feet away. The plaintiff thereupon directed defendant's attention to his previous deposition testimony in which he stated that he first saw plaintiff's vehicle at 150 to 200 yards away. The plaintiff's counsel then proceeded to a different line of questioning and concluded his examination without eliciting any further testimony about defendant's out-of-court statements, particularly his interrogatory responses.

Before closing plaintiff's case, counsel sought permission to read into evidence two answers to interrogatories that contradicted defendant's in-court testimony about his distance when he first saw plaintiff's vehicle. In interrogatory number 4, defendant testified that he was approximately forty to fifty feet from plaintiff's car when he first observed it, and in interrogatory number 29, he said he was about forty feet from plaintiff's vehicle when he first applied his brakes.

Counsel argued that the answers constituted admissions or previous inconsistent statements of defendant. To support his argument, plaintiff pointed to Rule 33(b) of the Superior Court Rules of Civil Procedure.[3] Noting that the Rules of Civil Procedure do not govern the admissibility of evidence, the trial justice found that admissibility was controlled by the Rules of Evidence. The trial justice concluded that although a party's admission is admissible under Rule 613 of the Rhode Island Rules of Evidence, a condition precedent to admissibility is a proper foundation. Counsel then requested permission to recall defendant "to ask these two questions." At that point, defense counsel, when asked by the trial justice if he intended to call defendant as a witness, responded that he had not yet decided, but "I'm tending to think that I will[.]"

The trial justice observed that the interrogatory answers fell "squarely within Rule 613" and that this testimony "underscores an inconsistency between the prior statement and the trial testimony" that "may have been less confusing, less preju-

---

**3.** Prior to the 1995 amendment to the Rules of Civil Procedure, answers to interrogatories could be used to the same extent as depositions pursuant to Rule 26(d) of the Superior Court Rules of Civil Procedure. However, Rule 33(b) of the Superior Court Rules of Civil Procedure presently provides that "answers [to interrogatories] may be used to the extent permitted by the Rhode Island Rules of Evidence."

dicial had it [been] done all at the same time[.]" The trial justice found that the evidence was offered for impeachment purposes and she disallowed it. We deem this to be error.

█ In reviewing evidentiary rulings, we note that "[t]he admission of evidence rests in the sound discretion of the trial justice and will not be disturbed absent a showing of an abuse of that discretion." *Tinney v. Tinney*, 770 A.2d 420, 434 (R.I. 2001) (quoting *Graff v. Motta*, 748 A.2d 249, 252 (R.I.2000)). Pursuant to Rule 33(b), answers to interrogatories "may be used to the extent permitted by the Rhode Island Rules of Evidence."

Ordinarily, the admissibility of extrinsic evidence of prior inconsistent statements is governed by Rule 613(b),[4] which provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same * * *." However, Rule 613(b) specifically exempts from its provisions "admissions of a party-opponent as defined in Rule 801(d)(2)." "The rule requiring that the witness must have been *warned when on the stand*, and asked whether he [or she] had made the statement about to be offered as a self-contradiction * * *, has usually been understood not to be applicable to the use of a party's admissions, i.e.,

they may be offered *without a prior warning to the party*." 4 Wigmore, *Evidence* § 1051 at 12 (Chadbourn rev. 1972). Several jurisdictions also permit the introduction of extrinsic evidence of a party's admission without advance warning to the party, whether or not the party is on the witness stand. *Lexington Insurance Co. v. Cooke's Seafood*, 835 F.2d 1364, 1368–69 (11th Cir.1988); *United States v. Cline*, 570 F.2d 731, 735 (8th Cir.1978); *United States v. Robinson*, 530 F.2d 1076, 1083 (D.C.Cir.1976). The rationale behind this exception to Rule 613, is that

> "[t]here is less danger of surprising a party than a witness, and the party will have ample opportunity to deny or explain after the inconsistent statement is proved; as a litigant, the party can simply call himself [or herself] as a witness later." 1 *McCormick on Evidence*, ch. 5 at 138 (John W. Strong 5th ed. 1999).

This Court has also recognized that "where the facts of a case clearly disclose that [a non-party] witness could be reasonably expected to have had full knowledge of the nature of the statement and the circumstances under which it was made, * * * the trial court should not require the formal laying of a foundation." *State v. Fales*, 114 R.I. 519, 522, 335 A.2d 920, 922 (1975). Although we subsequently have held that the *Fales* exception[5] is to be

---

4. Rule 613(b) of the Rhode Island Rules of Evidence provides:

"Prior statements of witnesses.—
" * * * *

"(b) *Extrinsic Evidence of Prior Inconsistent Statement of Witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. *This provision does not apply to admissions of a party-opponent as*

*defined in Rule 801(d)(2)."* (Emphasis added.)

5. In *State v. LaPlume*, 118 R.I. 670, 680 n. 5, 375 A.2d 938 n. 5 (1977), this Court stated that the exception to the rule requiring the formal laying of a foundation applied only when the witness had the requisite knowledge of the nature of the statement and the circumstances under which it was made. The Court noted that in *Fales*, it was reasonable to hold that the witness had the requisite knowledge because the witness's statement was procured four days before trial. However, *Fales*, was not applicable to the facts in *LaPlume* because the witness in that case made his statement

304

narrowly construed, we deem the reasoning of *Fales* to be persuasive. Because defendant's interrogatory answers are admissions of a party opponent, and defendant had full knowledge of his answers and the circumstances under which they were given, the interrogatory answers are admissible without requiring a formal foundation pursuant to Rule 613(b).

Moreover, counsel candidly admitted that he simply overlooked this evidence during his direct examination of the defendant and he requested the court's indulgence to permit him to recall the defendant for this limited purpose before he rested his case. Although we are satisfied that recalling the defendant for the limited purpose of introducing his previous admission was not required by the Rules of Evidence, by refusing this request the trial justice abused her discretion.

### Conclusion

For the reasons stated herein, we reverse the judgment of the Superior Court. The record shall be remanded to the Superior Court for a new trial.

late at night approximately one and one-half years before trial.